UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUE CAROL PHELPS,<br>Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | No. 2:25-cv-1173-AC<br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f.[1]

For the reasons that follow, the court will GRANT plaintiff's motion for summary judgment and DENY the Commissioner's cross-motion for summary judgment.

////

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability. 42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986). SSI is paid to financially needy disabled persons. 42 U.S.C. § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq.*, is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").

## I. PROCEDURAL BACKGROUND

Plaintiff filed claims for disability insurance (DIB) benefits and supplemental security income (SSI) on November 8, 2021, and January 14, 2022, respectively. AR 18. Her "date last insured" (DLI), the day on or before which she must show she was disabled to receive DIB, is December 31, 2022. AR 20. Plaintiff's claims were denied initially and upon reconsideration, and a hearing was held before ALJ John Sullivan on April 2, 2024. AR 18, 37-61 (transcript). Plaintiff appeared by telephone and was represented by her attorney, Walter J. Hermann. AR 37. Vocational expert Francene Geers also appeared and testified. Id. On April 22, 2024, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 18-24 (decision), 25-29 (exhibit list). On February 25, 2025, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-5 (decision).

Plaintiff filed this action on April 22, 2025. ECF No. 1; see 42 U.S.C. §§ 405(g), 1383c(3). The parties consented to the jurisdiction of the magistrate judge. ECF No. 9. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner (ECF No. 7), have been fully briefed. ECF Nos. 10 (plaintiff's summary judgment motion), 13 (Commissioner's summary judgment motion), 14 (plaintiff's reply).

## II. FACTUAL BACKGROUND

At all relevant times, plaintiff was "closely approaching advanced age" (age 50-54) under the regulations. AR 68; see 20 C.F.R §§ 404.1563(d), 416.963(e) (same). Plaintiff has a high school education (AR 298) and past jobs as a production assembler, cashier/checker, and truck driver. AR 58 (vocational expert's testimony).

## III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews

v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

////

IV. RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 423(a)(1)(E) (DIB), 1381a (SSI). Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b) and 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id., §§ 404.1520(a)(4)(ii), (c) and 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id., §§ 404.1520(a)(4)(iii), (d) and 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id., §§ 404.1520(a)(4)(iv), (e), (f) and 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id., §§ 404.1520(a)(4)(v), (g) and 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or

disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.
>
> 2. [Step 1] The claimant has not engaged in substantial gainful activity since October 2, 2020, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.)
>
> 3. [Step 2] The claimant has the following medically determinable impairments: bilateral hand osteoarthritis, status post trigger finger release, and status post right first arthroplasty and carpal tunnel release; bilateral hallux valgus, status post left bunionectomy; hypertension; gastroesophageal reflux disease (GERD); obesity; unspecified anxiety disorder; and major depressive disorder (20 CFR 404.1521 et seq. and 416.921 et seq.).
>
> 4. The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 404.1521 et seq. and 416.921 et seq.).
>
> 5. The claimant has not been under a disability, as defined in the Social Security Act, from October 2, 2020, through the date of this decision (20 CFR 404.1520(c) and 416.920(c)).

AR 20-24.

## VI. ANALYSIS

### A. Overview

Plaintiff challenges the ALJ's step two finding that plaintiff's medically determinable impairments of pain in her hands and wrist, pain from her ankles to hips to lower back, and anxiety/depression cause no more than minimal limitation of her ability to work. ECF No. 10-2 at 4-20.[2] "The step-two inquiry is a de minimis screening device to dispose of groundless

[2] Although plaintiff alleged and the ALJ addressed other impairments, plaintiff only challenges the ALJ's determination on the impairments identified. ECF No. 10-2 at 6.

claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). The purpose is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. Bowen v. Yuckert, 482 U.S. 137, 153 (1987). At step two of the sequential evaluation, the ALJ determines which of claimant's alleged impairments are "severe" within the meaning of 20 C.F.R. § 404.1520(c). "An impairment or combination of impairments may be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (internal quotation omitted). The step two severity determination is "merely a threshold determination of whether the claimant is able to perform his past work. Thus, a finding that a claimant is severe at step two only raises a prima facie case of a disability." Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007).

At the second step, plaintiff has the burden of providing medical evidence of signs, symptoms, and laboratory findings that show that his or her impairments are severe and are expected to last for a continuous period of twelve months. Ukolov v. Barnhart, 420 F.3d 1002, 1004-05 (9th Cir. 2005); see also 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii). An ALJ's finding that a claimant is not disabled at step two will be upheld where "there are no medical signs or laboratory findings to substantiate the existence of medically determinable physical or mental impairment." Ukolov, 420 F.3d at 1005.

B. Alleged Physical Impairments

Plaintiff testified that her most significant limitations are pain in her left hand and wrist; pain from her ankles to hips to lower back on the right side of her body; and anxiety/depression. AR 41, 46, 50. Plaintiff alleged that these impairments make it hard for her to hold anything, and she also has difficulty with walking and standing. Id. Although she had carpal tunnel surgery and reconstructive surgery on her thumb, she still drops things and has difficulty using her hands. AR 42. Additionally, despite surgery in June 2022, plaintiff alleged that she continues to have impairment in her right foot which causes difficulty with standing/walking; pain starts shooting through her right side, starting at the ankle, up into her knee, and then into her hip and lower back. AR 49.

*1. Bunion & Foot Pain*

In August of 2021, plaintiff presented to her physician with pain resulting from bilateral bunions. AR 415. She has a positive Lachman's MTP test on the right side. AR 418. Imaging done that same month showed 30° of hallux valgus deformity and a bony prominence along the distal medial aspect of the first metatarsal. AR 438. There was also narrowing and marginal spurring of the first metatarsophalangeal joint (MP joint); mild flat feet (pes planus); and a small inferior calcaneal spur. Id. In March 2022, plaintiff was seen for follow up of her bunion/hammertoe with plantar plate injury. AR 403. She was noted to have numbness in the left foot with occasional tingling and reported her pain was reported to be 6/10. Id. Exam showed pain at the left 1st MTP, 2nd and 3rd plantar plate; positive Lachman's at 2nd MP joint; mild crepitation at the 1st tarsometatarsal joint (TMT) without pain; and ankle contracture when the knee was extended. AR 406.

Plaintiff underwent a left foot bunionectomy on June 16, 2022, about 10 months after the initial record of her complaint. AR 436. In July 2022, she presented for pin removal. AR 551. She reported that she was not having pain, she did have some numbness at the lateral aspect of her left leg but had begun weight bearing in an orthopedic boot. Id. Plaintiff was advised she could transition to normal footwear. AR 554. At a follow-up visit in September of 2022, plaintiff reported palpable tenderness and a lump on her left heel with an unsteady gait and intermittent twitching. AR 517. Exam notes state that there was mild swelling in the left midfoot, though toes remained well aligned and strength was good. Id. Plaintiff was already wearing an ankle brace and was advised to continue with the brace, and a bone stimulator was ordered. Id.

The ALJ concluded that plaintiff's bunions were nonsevere, noting that they were not reported until July of 2021 and were surgically resolved by June of 2022. AR 22. Plaintiff responded positively to surgery and did not seek ongoing care. AR 23. The court finds that because the record reflects that any impairment from plaintiff's bilateral bunions was resolved in a period less than 12 months, the ALJ did not err in finding the impairment nonsevere.

*2. Hand and Wrist Pain*

The medical record shows that plaintiff was seen in July of 2021 for bilateral hand pain

that was aggravated by lifting characterized by joint instability, joint tenderness and locking. AR 421. She also reported that three fingers on her right hand were numb, causing pain, as well as wrist pain. Id. She reported that her right hand gets a lump next to her thumb and the pain is "excruciating." AR 426. Additionally, her three fingers on her left hand become numb, and it locks up when trying to make a fist. Id. She was also having pain in the left side of her neck that radiated into her shoulders. Id. Imaging of plaintiff's right wrist showed moderate narrowing and prominent marginal spurring of the first carpometacarpal joint (CMT) and diagnosed with moderately severe degenerative changes at this joint. AR 440.

In October 2021, plaintiff was seen for painful catching of her left long finger with difficulty stretching it out and was diagnosed with trigger finger. AR 389. She had other fingers that were similarly affected, but not as painful or actually catching. Id. Exam showed a palpable nodule just proximal to the MP joint of the left long finger, with mild triggering on extremes of flexion and extension and with tenderness to palpation. Id. Plaintiff indicated that she planned proceed with trigger finger release surgery. Id.

In September of 2022, plaintiff presented to her physician with right wrist and hand pain as well as numbness and tingling, reporting that she injured her right hand approximately 10 years prior while riding horses. AR 534. Examination showed plaintiff had right hand tenderness to palpation over the right first CMC joint with mild deformity. AR 536. She had a positive Phalen's, Durkan's18 and Tinel's tests. Id. She was referred for an ultrasound study of the left wrist to evaluate for median nerve and right carpal tunnel syndrome. AR 537.

In November 2022, plaintiff had right CMC arthroplasty with mini tight rope and carpal tunnel release. AR 501. Between December 2022 and March 2023, she attended physical therapy for arthritis of the carpometacarpal joint of the right thumb, carpal tunnel syndrome of the right wrist, right hand pain, right hand weakness, and impaired mobility. AR 489-93. In November 2023, she was seen again for hand pain, reporting pain with lifting small items, and a lifting restriction of no more than 5 pounds was prescribed. AR 568, 575.

The ALJ found plaintiff's hand complaints nonsevere, noting that though she first complained of hand pain in 2020, the complaints were nonspecific. AR 22. It was not until

October of 2021 that plaintiff sought specialist help for her trigger finger, and after left-hand trigger finger release surgery, there was no follow up and no left-sided complaints until recently. AR 22. Plaintiff's 2022 complaints were related to right-side carpal tunnel, and after her November carpal tunnel release surgery she briefly attended physical therapy and had improvements in range of motion. AR 22. The ALJ noted that plaintiff reported remaining active in caring for her home 5-acre property, horse riding, and doing artwork, and she did not seek additional treatment for right upper extremity impairments. Id.

The ALJ erred in finding that plaintiff's wrist and hand impairments were nonsevere because they did not cause significant limitations for 12 months. Although a diagnostic study of the right wrist in August 2021 showed moderate narrowing and prominent marginal spurring of the first carpometacarpal joint, it also showed joint spaces otherwise within normal limits, bony alignment within normal limits, and unremarkable soft tissues. AR 440. Plaintiff's right-side complaints continued through 2022 (AR 536) and were apparently resolved by carpal tunnel release surgery in January of 2023. This is more than a 12-month period; even if any disability would have likely resolved by the time of the ALJ hearing, the conclusion of nonseverity is not supported by the record. While the ALJ found it noteworthy that after a brief course of physical therapy, plaintiff did not seek additional treatment for her right hand or wrist (AR 22), it is not clear that the ALJ considered whether plaintiff was disabled for a closed period prior to the surgery.

Further, as to plaintiff's left hand, the ALJ concludes that plaintiff's left-hand impairments were nonsevere because after her October of 2021 concerns with trigger finger were resolved with trigger finger release surgery, "there was no follow up and no left-sided complaints until recently." AR 22. This "recent" complaint refers to a brief medical record from November of 2023, in which plaintiff was found unable to lift more than 5 pounds with her left hand. AR 568. The record isn't clear as to whether this visit was a result of ongoing problems with her left hand dating back to the trigger finger diagnosis. Upon review, the court finds that the ALJ failed to properly support his conclusion that plaintiff's hand and wrist impairments on both sides, alone or in combination with other impairments, were nonsevere.

C. Alleged Mental Impairments

The ALJ rejected plaintiff's claims of anxiety and depression at step two, noting that although anxiety and/or depression were endorsed in earlier systems reviews, the complaints were not discussed until August of 2022 and plaintiff did not engage in mental health treatment until October of 2023. AR 23. Further, the ALJ noted that plaintiff did not describe her auditory hallucinations as "bothersome" until March of 2024. AR 23. The ALJ concluded that "[t]he records show no more than mild limitations in the four areas of the B criteria—understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. The claimant presented as somewhat depressed during the first two contacts with a prescribing source, but she showed no problems with memory, concentration, or thought content suggestive of significant limitations in the B criteria." AR 24 (citing medical visit records at AR 471, 572).

Regarding depression and anxiety, plaintiff testified at the hearing before the ALJ that her doctor was still working to adjust her medications. AR 46. Her mental health symptoms included sadness, crying a lot, and having a hard time focusing. AR 47. Relevant medications included Abilify and Lexapro (Escitalopram). AR 45. In May 2022 she was seen by her PCP for other medical concerns and reported anxiety, depression, and/or stress, but had a normal psychiatric exam. AR 399-400. In September of 2022, plaintiff reported to her PCP that she was having chronic depression and could not function properly in life. AR 538. Plaintiff stated that a referral had previously been placed to behavioral health by her gynecologist, but she had not heard from them. Id. In March 2023, again while visiting her PCP, she was noted to be experiencing major depression, which plaintiff reported started back in 2009. AR 484. Plaintiff also reported suffering from posttraumatic stress disorder. Id. She reported being sad most days of the week and having increased appetite and trouble sleeping. Id. Plaintiff reported that she was still waiting to hear from the behavioral health team, and a second referral was made. AR 485.

In October of 2023 plaintiff had an initial evaluation at a psychiatry outpatient clinic. AR 467. Plaintiff reported that she has a history of passive suicidal ideation and auditory

hallucinations. AR 467-68. She endorsed low mood, difficulty with focus and concentration, and dissociative episodes where she would lose track of hours at a time. Id. She scored a 24 on the PHQ-9, indicating severe depression and a score of 19 on the GAD-7, indicating severe anxiety. Id. In December 2023, she continued to report difficulty falling asleep and stated that things that would take her 1-2 hours to do in the past now take 4-6 hours. AR 570. She also was forgetful, felt overwhelmed, and she had difficulty concentrating. Id. She continued to report auditory hallucinations, like someone is whispering. Id. Her PHQ-9 score was 19 indicating moderate-severe depression. AR 571. Her insight and judgement were assessed as fair, and her affect was somewhat depressed. AR 572. In March 2024, she reported that she had gotten only minor improvement with Lexapro. AR 579. She reported that she continued to have anxiety when leaving the house – it was noted that her GAD-7 scores were indicative of anxiety. Id.

The ALJ erred in concluding at step two that plaintiff's mental health impairments were not severe. The ALJ relied, at least in part, on plaintiff's delayed intake with mental health specialists, however the record indicates that plaintiff had been seeking mental health services since before May of 2022, but was not contacted by behavioral health services after at least two separate referrals from her medical providers. AR 443, 485. The ALJ also relies on a record showing that plaintiff declined medication for sleep during a December 2023 appointment at which she reported feeling calmer; the ALJ finds a conflict between this record and plaintiff's testimony about insomnia being an issue. AR 23, 570. The actual medical record reads "She continues to have some difficulty falling asleep, states she is not interested in the medication for this." AR 570. The ALJ's interpretation of this record as undercutting plaintiff's allegations of depression and anxiety is not persuasive. At that very same appointment, plaintiff was reporting auditory hallucinations, difficulties with concentration and overwhelm, and had a PHQ-9 score indicating moderate-to-severe depression. AR 570-71.

Finally, the ALJ's rationale that "it was not until the March 2024 appointment that she reported auditory hallucinations as somewhat bothersome" is unpersuasive. AR 23. Auditory hallucinations were repeatedly reported, and earlier reports did not indicate that the hallucinations

were specifically *not* bothersome; at a minimum, they were consistently present. While the ALJ makes a finding that plaintiff experienced only mild limitations in the Paragraph B criteria, the finding is conclusory and unsupported by the record. AR 24. The ALJ's rationale is unsupported, and he erred at step two by finding plaintiff's mental health impairments non-severe.

VIII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 10), is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 13) is DENIED; and

3. The Clerk of the Court shall enter judgment for plaintiff, remand the action to the Commissioner for further proceedings, and close this case.

DATED: August 3, 2026

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE